(No. 5068.   April 30, 1929.)

MARGARET McSHANE, Respondent, v. P. J. QUILLIN and M. B. QUILLIN, His Wife, Doing Business as P. J. QUILLIN & COMPANY, Appellants.

[277 Pac. 554.]

*Reversed and remanded for a new trial.*

James F. Ailshie and James F. Ailshie, Jr., for Appellants.

Lynn W. Culp and R. H. Elder, for Respondent.

GIVENS, J.—Respondent recovered judgment against appellants, sued as her agents in the management, rental and disposition of her real property on four causes of action. The first was brought to recover $5,000 because, as alleged, appellants, as respondent's agents, had fraudulently rented over a period of fifty months to their unlawful gain, the property in question for that much less than its true rental value.

The second cause of action was for $2,221.32, the unaccounted for and unpaid balance of the proceeds of a loan secured by appellants for respondent on her property.

In the third cause of action, respondent seeks to recover $1,000 paid appellants as a part payment on commissions which they claimed to be due for negotiating the sale of the premises in question.

The fourth cause of action was based on alleged fraudulently retained rents and profits of $2,052.09.

The first and second causes, as against a general demurrer, sufficiently alleged fraud and that respondent did not learn of the fraud until within three years, the statutory period, of the time suit was brought.

Appellants demurred to the third cause of action on the same grounds, in general, as to the first and second, and appellant, P. J. Quillin, in addition, on the ground that he was improperly joined, the complaint failing to show that he was implicated in the fraudulent representations therein alleged to have been made by Mrs. Quillin, the other appellant. There is no merit in this last contention. If P. J. Quillin had knowledge of these alleged fraudulent representations made by the other appellant and if with this knowledge he ratified her acts and participated in any benefits that may have accrued from them, he would be equally liable with Mrs. Quillin for the alleged fraud. (27 C. J. 11.)

It is the further contention of appellants that this third cause did not state sufficient facts to constitute a cause of action. It alleged, in substance, that Mrs. Quillin, as agent for Hyman, went to the home of respondent in California and so misrepresented the value of the property in question that respondent agreed to sell it for $7,000 less than its true value; and secondly, that after the sale, respondent, believing herself liable for the five per cent commission on the sale price of $28,000, paid $1,000 to appellants on account.

While the cause of action could perhaps be couched in more explicit terms, recovery seems to be sought on two grounds; first, because of the breach of trust and lack of good faith on the part of appellants, and secondly, because, even assuming their good faith, they were not entitled to

any commission, not holding a broker's license as required by 1921 Sess. Laws, chap. 184, p. 378.

That the allegations going to the first point, if sustained, would state a cause of action can hardly be questioned. There is a fiduciary relationship between a real estate broker and his client which requires the utmost good faith (*Clopton v. Meeves*, 24 Ida. 293, 133 Pac. 907), and in the absence of good faith the broker is not entitled to recover anything for his services. (*Clopton v. Meeves, supra; Jeffries v. Robbins,* 66 Kan. 427, 71 Pac. 852; 9 C. J. 568–570.)

A consideration of the second point raises the question of the rights of the parties to an illegal contract. No principle in law, perhaps, is better settled than that, which, with certain exceptions, refuses redress to either party to an illegal contract, although this principle has been severely criticised. (Wigmore, 25 Amer. L. Rev. 712, n.) On first blush, it might appear that the facts in this case fall within one of the well-recognized exceptions to this rule, namely, that where the parties are not *in pari delicto,* the innocent party may recover. This is particularly true where the prohibition of the statute, as in the case before us, is aimed at the act of the defendant and not at that of the plaintiff. (*Stansfield v. Kunz,* 62 Kan. 797, 64 Pac. 614.) But a closer examination of the principles underlying the cases falling within this exception convinces us that they have no application to the case at bar. It would appear that in such cases recovery is permitted on the principles of the law of *quasi* contracts. (Woodward on the Law of Quasi Contracts, chap. 8, p. 210.)

The essence of a *quasi*-contractual obligation lies in the fact that the defendant has received a benefit which it would be inequitable for him to retain. This was clearly pointed out by Lord Mansfield in the first case recognizing the doctrine of *quasi* contracts. "If the defendant," he said, "be under an obligation, from the ties of natural justice, to refund, the law implies a debt, and gives this action, founded in the equity of the plaintiff's case, as it were, upon a con-

tract ('*quasi ex contractu*' as the Roman law expresses it). . . . . This kind of equitable action to recover back money, which ought not in justice to be kept, is very beneficial and therefore much encouraged. It lies only for money which, *ex aequo et bono,* the defendant ought to refund; it does not lie for money paid by the plaintiff which is claimed of him as payable in point of honor and honesty, although it could not have been recovered from him by any course of law,—as in payment of a debt barred by the statute of limitations, or contracted during his infancy, or to the extent of principal and legal interest upon a usurious contract, or, for money fairly lost at play; because in all these cases the defendant may retain it with a safe conscience, though by positive law he was barred from recovering.'' (*Moses v. Macferlan* (1760), 2 Burr. 1005.)

But where, as here, assuming appellants' good faith, the benefit received by them, namely the commission of $1,000, had been fairly earned, even though the statute barred its recovery, its retention was not inequitable and they were under no *quasi*-contractual obligation to return it. Where the consideration has been paid and the contract executed and the benefit conferred on the defendant was in justice and good faith due, we believe there is no sound principle by which plaintiff can recover. (*Stansfield v. Kunz, supra; Deaton v. Lawson,* 40 Wash. 486, 111 Am. St. 922, 82 Pac. 879, 2 L. R. A., N. S., 392.)

The facts in *McDuffee v. Hayden Coeur d'Alene Irr. Co.,* 25 Ida. 370, 138 Pac. 503, can be readily distinguished. There the plaintiff, who had entered into a contract with an irrigation company for the purchase of certain lands and water rights, acquired no title because the contract was expressly made void by statute. Obviously, it would have been inequitable to permit the defendant company to retain the money paid on the contract, the plaintiff having received nothing under the contract.

The third count, therefore, stated a cause of action. (*Casady v. Scott,* 40 Ida. 137, 237 Pac. 415; *Gould v. Hill,* 43 Ida. 93, 251 Pac. 167; *Rowland v. Demming Exploration*

*Co.*, 45 Ida. 99, 260 Pac. 1032.) If the appellants were guilty of bad faith, the commission had not been earned and therefore should be returned. However, if appellants were acting in good faith, the commissions to which they were entitled, *ex aequo et bono,* could not be recovered, even if appellants had no license at the time the transaction was consummated.

A demurrer was interposed to the fourth cause of action on the ground that it was for money had and received and therefore improperly joined with the other causes which sounded in tort.

Subdivision 4 of C. S., sec. 6688, provides that causes of action against a trustee may be joined. These were all actions against appellants as agent or trustee for the respondent. The demurrer further specified that the fourth cause of action was barred by the statute of limitations. In an action for money had and received, the statute of limitations has been held to run from the date of the receipt of the money or at least from what would be considered a reasonable time thereafter for the money to be returned. (3 Sutherland on Code Pleading, Practice and Forms, sec. 5046.) Where a complaint shows on its face that it was barred, this defense may be taken by demurrer; otherwise by answer. It would therefore appear that this cause of action as to some of the items was barred and as to some was not. (37 C. J. 856.) The demurrer on the bar of the statute should have been sustained.

The second assignment of error is based on the ground that the case was tried to a jury instead of to the court, appellants' contention being that it was an accounting case. There being allegations of fraud, and issues as to damages, trial to a jury was not improper. (35 C. J. 176.)

The fourth assignment is based on the action of the court in permitting respondent to amend by adding her husband as party plaintiff. Counsel for appellants took the position in the court below that under the pleadings community property was involved and therefore the husband was a necessary party. (C. S., sec. 4660.) The court permitted

an amendment. (C. S., sec. 6726, as amended by 1921 Sess. Laws 526.) No extension was requested, and no prejudice is shown.

It is now urged, however, that, as amended, there was a misjoinder as to the fourth cause of action. That is, the fourth cause of action being for rents due on the wife's separate estate, it was improper to make the husband a party plaintiff.

If the property involved in the first, second and third causes of action was community property, which we do not decide, there was no error in permitting a husband to be joined as party plaintiff at the time and in the manner done, in the absence of a showing of prejudice. In fact, under the statute, he was a necessary party. Furthermore, counsel for appellants himself suggested that the pleadings were defective without such joinder and he can't be heard now to complain that such joinder was improper.

In regard to the fourth cause of action, assuming that only separate property was involved, and this question we likewise do not decide, the joinder of the husband was not improper. Under the common law, the husband was a necessary party in any action affecting the wife's property. Under our present statutes, he is not a necessary party but he is a proper party. (C. S., sec. 6637; *Muir v. Pocatello*, 36 Ida. 532, 212 Pac. 345; *Ness·v. Coffer*, 42 Ida. 78, 244 Pac. 145; *Spargur v. Head*, 90 Cal. 221, 27 Pac. 198; *Clark v. Koesheyan*, 26 Cal. App. 305, 146 Pac. 904; *Delaski v. Kovacich*, 70 Ind. App. 203, 123 N. E. 223.)

The fifth assignment is disposed of by the ruling on the demurrer.

The sixth assignment is not well taken because it is not shown that appellant did not at a later time have full opportunity to develop and present the testimony sought. The order of proof is largely discretionary with the trial court and no abuse is here shown. (*Watt v. Stanfield*, 36 Ida. 366, 210 Pac. 998; *Bashore v. Mooney*, 4 Cal. App. 276, 87 Pac. 553; *McBride v. Steinweden*, 72 Kan. 508, 83 Pac. 822; 38 Cyc. 1352.)

The ninth assignment of error goes to an impeaching question asked of the witness, Hyman, lessee and purchaser of the premises, by appellants' counsel to which an objection was sustained. It does not appear from the record what the question, in its completed form, which counsel had in mind would have been, and the question the record shows he was permitted to ask and have answered is substantially the same as the question objected to. Therefore, we are unable to say that appellants have been prejudiced. (*Idaho Farm Development Co. v. Brackett*, 44 Ida. 272, 257 Pac. 35; *Herring v. Davis, ante*, p. 211, 273 Pac. 757.)

Assignment number 13 is directed to the admission of a letter from the Murphy-Favre Company of Spokane to L. W. Culp, attorney for respondent, referring to the loan which had been negotiated for Mrs. McShane, and returning the lease. The trial court in permitting its introduction ruled that it would be stricken if its relevancy was not later established. But in the absence of a request by counsel for its exclusion when its irrelevancy had become apparent, error cannot be predicated on the failure of the court to strike it out. (38 Cyc. 1344.)

The same ruling was made and the same conclusion is reached with regard to the testimony admitted and which admission is assigned as error in assignment number 16.

The questions asked of the witness Sletmoe, assigned as erroneous in assignment 17, were immaterial and tended to raise a collateral issue. The objections should have been sustained.

The same conclusion applies to the question to which objection is made in assignment 19.

The remaining assignments may be divided into five divisions. Assignments Nos. 3, 20, 21, 22 and 23 refer in general to the sufficiency of the evidence. In view of the fact that a new trial is ordered, these assignments will not be discussed.

Assignments Nos. 7, 8, 10, 18 and 36 are based on objections made by appellants to testimony establishing real estate values in Coeur d'Alene with particular reference to

property in the vicinity of that owned by Mrs. McShane. Some of this testimony was given by the owners, some by realtors of Coeur d'Alene and some by alleged prospective purchasers like the witness Muncy who testified that he would have been willing to pay more for the McShane property than that actually paid by the purchaser, Hyman. This testimony was not offered for the purpose of proving value, but rather to contradict statements respondent claimed appellants had made to her with regard to the sale price of the same property as bearing on their fraudulently inducing her to sell her property for less than its true value. As such it was admissible.

The testimony of Hyman, that he would have been willing to pay more for the property than he actually did pay, threw some light on the diligence and good faith of appellants in protecting Mrs. McShane's interest. The failure of the Quillins, however, to secure the best possible rental for the property entrusted to them is by no means conclusive evidence of their bad faith; therefore the instruction complained of in assignment 36, covering this phase of the evidence, was too broad. (2 C. J. 722.)

Assignments 11, 12, 14, 15 and 43 are based on alleged prejudicial remarks of the court. Suffice it to say that no statements appear other than explanations by the court in making his rulings, and while the court should be careful to refrain from saying anything in the presence of the jury which might improperly influence them, counsel should be equally careful not to provoke remarks of a prejudicial character. (*State v. Knutson, ante,* p. 281, 274 Pac. 108; *McKissick v. Oregon Short Line Co.,* 13 Ida. 195, 89 Pac. 629.)

Assignments Nos. 24, 25, 26, 27, 31, 32, 33, 35, 37, 38, 39, 40 and 42 allege error in the instructions.

The instructions as a whole were unnecessarily long, contradictory and confusing, and frequently commented on what had been proven and the weight of the testimony. This is particularly true of the instructions complained of in assignments 27, 31, 35 and 39. (*Thatcher v. Quirk,* 4 Ida.

267, 38 Pac. 652; *Haight v. Vallett,* 89 Cal. 245, 23 Am. St. 465, 26 Pac. 897; 38 Cyc., pp. 1598–1608.)

Assignments 25 and 26 were based on the objection that the court, during the giving of the instructions, inquired of counsel their views in connection with the instructions. While not commending this practice, it was a procedure largely within the discretion of the trial judge. He had the right to correct his instructions as they were being given and we cannot say that this was error.

The instructions complained of in assignments 32 and 33 which were to the effect that if an agent does not conduct himself with entire fidelity toward his principal, he loses his right to compensation, were substantially correct. (*Clopton v. Meeves, supra; Cannell v. Smith,* 142 Pa. 25, 21 Atl. 793, 12 L. R. A. 395; 9 C. J. 570.)

The instruction complained of in assignment 40 was correct, taken in conjunction with the instructions heretofore considered under assignments 32 and 33.

Assignments 37 and 38 deal with instructions. The court instructed the jury, in effect, that the respondent was warranted in relying on the representation of her agents as to the reasonable rental value of the premises, and that she was not required to make a personal investigation until she had reason to believe that her agents were unfaithful in their trust.

These instructions were too broad under the facts of this case, and invaded the province of the jury. The evidence disclosed a long series of communications between appellants and Mrs. McShane, and various opportunities on the part of the latter to acquaint herself with the true facts. Whether or not, under all the circumstances of the case, she was warranted in relying solely on her agents for her information was a question of fact for the jury.

The instruction mentioned in assignment 42 ignored the fact that the question whether repairs were to be made was a question of fact, and therefore invaded the province of the jury. The lease after its execution may have been modified

by parol. The nature of the agreement was for the jury. Its legal effect was for the court.

The instructions complained of in assignments 28, 29, 30, 34 and 41 are concerned with the question of the burden of proof. The court instructed the jury, in substance, that if the evidence showed that the appellants had received moneys belonging to the respondent, in their capacity as agents, the burden then shifted to appellants to establish either that the money had been paid over to the principal, or that it had been expended for her use and benefit, which expenditure she had either authorized or ratified. These instructions were correct. (*San Pedro Co. v. Reynolds,* 121 Cal. 74, 53 Pac. 410; *Dodge v. Hatchett,* 118 Ga. 883, 45 S. E. 667; *Hildreth v. Ayer & Lord Tie Co,* 32 Ky. Law, 1212, 108 S. W. 255; *Farmers' Assn. v. Montgomery,* 92 Minn. 194, 99 N. W. 776; Mechem on Agency, 2d ed., p. 980, sec. 1344; 2 C. J. 930, 931.)

Attention is called to the fact that the instructions were not numbered and it is exceedingly difficult for the appellate court to indicate specifically and without unduly extending the opinion the particular portions which were erroneous or incorrect.

Instructions should be numbered, should be short and concise and should state only the rules of law necessary to a determination of the particular cause on the evidence introduced. (*Austin v. Brown Bros. Co.,* 30 Ida. 167, 164 Pac. 95.)

Because of the prejudicial errors above mentioned, the judgment is reversed with instructions to grant a new trial. Costs awarded to appellants.

Budge, C. J., Wm. E. Lee, J., and Hartson, D. J., concur.

Petition for rehearing denied.